IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,                     No. 1:09-cr-30045-01-PA
                                           No. 1:13-cv-07-PA

        v.

                                           **AMENDED ORDER**

ISMAEL ANAYA,

            Defendant.

---

**PANNER, J.**

Defendant Ismael Anaya moves for relief under 28 U.S.C. §
2255, claiming he received ineffective assistance of counsel
from his trial and appellate attorneys.  I deny Defendant's
motion.

#### BACKGROUND

Defendant was charged with conspiracy to distribute
heroin.  Daniel Koenig, an experienced criminal defense
attorney, was appointed to represent him.

Koenig states by affidavit that visited Defendant in the
Jackson County Jail several times starting in November 2009.

After Defendant was transferred to the Josephine County Jail,
Koenig visited Defendant "many times."  Koenig Aff. at 1, ECF
No. 257-2.

Koenig met frequently with Defendant's girlfriend,
family, and friends, some of whom were in California.  Koenig
also "went to locations mentioned in the discovery as well as
others suggested by" by witnesses he interviewed.  <u>Id.</u>  He
"read all the discovery provided and generated further
information" from his own efforts.  <u>Id.</u>  Koenig discussed his
findings with Defendant.

In February 2010, Koenig received an plea offer letter
from the U.S. Attorney's Office.  The plea offer stated, "The
parties agree that defendant's relevant conduct . . . is at
least 10 kilograms but less than 30 kilograms of a mixture of
substance containing heroin for a **Base Offense Level of 36,**
prior to adjustments."  Plea Letter ¶ 7 (original emphasis),
ECF No. 135.

In the plea letter, the government agreed to "recommend a
sentence within the applicable guideline range or the
mandatory statutory minimum, whichever is greater, so long as
defendant demonstrates an acceptance of responsibility."  <u>Id.</u>
¶ 9.  Defendant reserved the right to seek a downward
departure or adjustment.  The plea offer stated the maximum
possible sentence was life imprisonment, and that the court

would not be bound by the parties' negotiations.

Koenig states, "I personally went through this document and those rights with defendant on many occasions." Koenig Aff. at 1. Koenig states he "never told [Defendant] or any other client that he would receive a specific sentence unless that was previously approved by the court. [Defendant] understood the maximum involved and that I would be trying to obtain a lesser sentence to the best of my ability." Id. at 2.

Defendant states that Koenig visited him "at the Federal Courthouse, Jackson County" on April 6, 2010. Def. Aff. ¶ 3, ECF No. 256. Defendant states the visit lasted twenty minutes, "mostly consist[ing] of [Koenig] apologizing for him not coming to visit more often or sooner" because he had been representing a defendant on trial for murder. Defendant states Koenig discussed the plea offer, stating that Defendant would be subject "only . . . to a mandatory minimum sentence of . . . ten years." Def. Aff. ¶ 6. Defendant states Koenig advised him that he would be accountable for only one kilogram of heroin.

I presided over Defendant's change of plea proceeding in June 2010. See ECF No. 226-1 (transcript of plea proceeding). Defendant was 28 years old and spoke English fluently. He was born and raised in the United States, and had graduated from

high school here.

When I asked Defendant whether he was under the influence of drugs or alcohol, he replied that he was taking the prescription drugs "Paxil and dyslexa[1] [sic] or something like that."  ECF No. 226-1 at 4 ("[sic]" in original).  I asked, "Does it affect your thinking in any way?"  Defendant replied, "Actually it kind of helps me a little better."  Id.  Defendant affirmed that he was thinking clearly.

Defendant then stated he had read and understood the plea petition and the plea agreement before signing it.  Defendant stated that everything in the plea petition was true and accurate.  Defendant stated that he understood the plea agreement did not bind the court to a particular sentence.  Koenig stated Defendant had dyslexia "so we have spent an extra amount of time . . . going through the plea petition both orally and in writing; we have done that on a couple of occasions, the last being about a half hour this morning."  Id.

Defendant denied that he had been pressured or coerced into pleading guilty.  The plea petition itself states no one "has promised or suggested that I will receive a lesser term of imprisonment" for pleading guilty, except as stated in the

_____

1.  Based on context, "dyslexa" was most likely Celexa (citalopram), an antidepressant.

plea agreement.   ECF 135 ¶ 21.

After finding that Defendant knowingly and voluntarily agreed to the terms of the plea agreement, I signed the order entering the plea of guilty.

Probation then prepared the presentence investigation report (PSR) and sent it to Koenig, who sent Defendant a copy. Koenig submitted a timely response with objections to the PSR's recommendations.   The probation officer responded to the objections in an addendum to the PSR.   Koenig later filed a sentencing memorandum, arguing that the sentence proposed by the PSR was far too harsh.

At sentencing, Koenig objected to treating Defendant's criminal history as Category III.   I ruled that the PSR's calculation was accurate, although "a little bit heavy" for the offenses Defendant had committed.   ECF 216-1 at 16.

The parties agreed at sentencing that the base offense level was 36, based on Defendant's responsibility for between ten and thirty kilograms of a mixture or substance containing heroin.   I agreed with the PSR that Defendant should receive a 4-level enhancement for his managerial role, and a 3-level reduction for acceptance of responsibility.   The final guideline range was 235 to 293 months.

The government recommended a sentence of 235 months. Koenig sought a sentence of 120 months, the statutory

mandatory minimum.  Because of the seriousness of Defendant's offense and his leadership role as a heroin distributor, I imposed a sentence of 260 months.

The Ninth Circuit affirmed this court's judgment.  <u>United States v. Anaya</u>, No. 10-30286, 453 F. App'x 738 (9th Cir. 2011).

### STANDARDS

A prisoner serving a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255.  When there has been a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  <u>Id.</u>

### DISCUSSION

I.  **Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, a defendant must show that his lawyer's performance fell below an objective standard of reasonableness.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686-87 (1984).  The defendant also must show that he was prejudiced by counsel's performance by establishing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Id. at 694.

## II. Discussion

In his § 2255 motion, Defendant raises twelve claims for relief. Defendant bases the claims on alleged ineffective assistance by his trial and appellate counsel.

### A. Claim 1

In Claim 1, Defendant contends Koenig advised him that he would be accountable for only 1 kilogram of heroin and would be sentenced to no more than 120 months, the mandatory minimum, if Defendant pleaded guilty immediately. Defendant asserts Koenig told him that "behind the scenes Anaya was only to be held accountable for one kilogram and receive 120 months. His counsel said, 'it's all smoke and mirrors, a paper show.'" Def. Mem. in Supp. at 5, ECF 255.

The allegations supporting this claim contradict Defendant's own sworn statements. Defendant stated under oath at the change of plea hearing that no one promised him anything outside of the plea agreement to induce his guilty plea. Koenig states by affidavit that he never told Defendant the sentence would be only 120 months, and that Defendant understood the potential maximum sentence. I agree with the government that other than Defendant's own allegations, no evidence in the record shows Defendant was promised a 120-month sentence.

A defendant's "statements at the plea colloquy carry a strong presumption of truth." Muth v. Fondren, 676 F.3d 815, 821 (9th Cir. 2012); United States v. Morrison, 113 F.3d 1020, 1021 (9th Cir. 1997) ("Any attempt to contradict the factual basis of a valid plea must fail."). This is because "solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Defendant has not overcome the presumption that his statements under oath at the plea proceeding were true. I deny Claim 1.

**B.  Claim 2**

In Claim 2, Defendant contends Koenig failed to challenge the drug amounts Probation used to calculate the guideline range. Defendant contends Koenig should have investigated the government's laboratory reports on the purity and amount of heroin involved.

Koenig received extensive discovery from the government on drug purity, which indicated Defendant was selling unusually pure heroin. Defendant told a government investigator that he had been selling between 3/4 and 1 kilogram of heroin per month during the conspiracy. Defendant agreed in the plea agreement that he was responsible for between 10 and 30 kilograms of heroin.

Under these circumstances, it would have been futile for Koenig to challenge the amount and purity of the heroin as calculated by the government.  I deny Defendant's Claim 2.

### C.  Claim 3

In Claim 3, Defendant contends Koenig should have moved to suppress evidence obtained from phone conversations between Defendant and others involved in the conspiracy.  But Defendant has not shown that Koenig would have a valid basis for such a motion because the evidence in question was obtained through court authorization.  Nor has Defendant shown that a successful motion to suppress one or more of the conversations would have changed the outcome of his case.

### D.  Claim 4

In Claim 4, Defendant contends Koenig failed to review discovery documents, including transcripts of intercepted telephone conversations.  Defendant contends Koenig did not know which conversations were drug-related, so he could not challenge the amount of drugs attributed to Defendant.

Koenig states by affidavit that he did review the extensive discovery materials.  Defendant stated under oath at the plea proceeding that Koenig had discussed the charges and possible defenses with him.

Defendant also has not shown how this alleged failure prejudiced.  Defendant has failed to show Koenig was

ineffective on this issue.

    **E.  Claim 5**

In Claim 5, Defendant contends Koenig failed to object to inaccurate information in the PSR.  Defendant claims the PSR incorrectly stated the date he moved to Oregon from California; his relationship to another alleged drug dealer; the reason Defendant possessed large amounts of cash when arrested; and Defendant's criminal history.

Defendant's Claim 5 is factually incorrect because Koenig did object to the PSR, raising most of the grounds Defendant mentions.  Nor Defendant has shown that Koenig's alleged failure could have changed the outcome of the case.

    **F.  Claim 6**

In Claim 6, Defendant contends Koenig was ineffective for failing to object to statements made by the prosecutor at sentencing.  Defendant contends the prosecutor stated untruthfully that Defendant had been involved in a robbery.

The government responds that the prosecutor's statements were based on an intercepted conversation in which Defendant discussed a robbery.  Defendant has not shown that the prosecutor's statement was incorrect, or that the statement prejudiced him.

    **G.  Claim 7**

In Claim 7, Defendant contends Koenig was ineffective for

"failure to object to the breached plea agreement."  Defendant
contends he agreed to be responsible for only 1 kilogram of
heroin, and the government then breached the agreement by
claiming he was responsible for between 10 and 30 kilograms.

Defendant took responsibility in the plea agreement to
more than 1 kilogram.  As the government notes, Defendant
himself argues that although the plea agreement required that
he take responsibility for more than 1 kilogram, Koenig told
him there was a secret unrecorded agreement to the contrary.
Defendant has not shown that the government breached the plea
agreement, so Koenig was not ineffective for failing to raise
this issue.

H.  **Claim 8**

In Claim 8, Defendant contends Koenig was ineffective for
failing to have Defendant interview with Probation.  I agree
with the government that Defendant is not entitled to
effective counsel at a presentence interview.

A defendant's presentence interview with a probation
officer is not a critical stage of the adversary proceedings.
See United States v. Benlian, 63 F.3d 824, 827 (9th Cir.
1995). "[I]f the stage is not critical, there can be no
constitutional violation, no matter how deficient counsel's
performance." Id.  Although the Ninth Circuit later held that
a presentence interview is a "critical stage" in a capital

case, the Ninth Circuit did not overrule <u>Benlian</u>.  <u>See Hoffman</u>
<u>v. Arave</u>, 236 F.3d 523, 537-38 & n.24 (9th Cir. 2001).  In
addition, I see no prejudice to Defendant from this alleged
failure.

### I.  Claim 9

In Claim 9, Defendant argues Koenig was ineffective for
failing to object to the criminal history calculation in the
PSR.  Koenig did object, however, arguing that the criminal
history category overstated the seriousness of Defendant's
record.  I disagreed, concluding the calculation was accurate
and did not overstate Defendant's criminal history.  Because
the PSR accurately calculated Defendant's criminal history
category, an objection on that basis would have been futile.

### J.  Claim 10

In Claim 10, Defendant contends Koenig advised him not to
tell the court at the change of plea hearing about taking
psychotropic medication.  The record shows that I asked
Defendant, as I would any defendant entering a guilty plea,
whether he was under the influence of drugs or alcohol.
Defendant replied that he was taking antidepressants, and that
the drugs seemed to help.  He affirmed that he was thinking
clearly.

Even if Koenig did advise Defendant to keep quiet about
psychotropic medications, Defendant apparently ignored that

advice.  He cannot show prejudice.

   **I.  Claim 11**

   In Claim 11, Defendant contends his appellate counsel was
ineffective for failing to raise the ineffective assistance of
counsel issues that Defendant now raises in this motion.  The
Strickland standards apply to a defendant's claims of
ineffective assistance of appellate counsel on direct appeal.
Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997).

   Defendant does not state whether he notified appellate
counsel about possible ineffective assistance claims.  As the
government notes, ineffective assistance claims are rarely
viable on direct appeal.  See United States v. Lillard, 354
F.3d 850, 856 (9th Cir. 2003) (such claims may be raised only
when the record is fully developed or when the ineffectiveness
is patently obvious).

   Here, Defendant's counsel was not ineffective for failing
to raise the claims Defendant makes here.  "A hallmark of
effective appellate counsel is the ability to weed out claims
that have no likelihood of success, instead of throwing in a
kitchen sink full of arguments with the hope that some
argument will persuade the court."  Miller v. Keeney, 882 F.2d
1428, 1433 (9th Cir. 1989).  Here, the record not sufficiently
developed, and there was no basis for an ineffective
assistance claim even if the record had been more fully

developed.

### J.  Claim 12

In Claim 12, Defendant argues he received ineffective assistance of counsel when his appellate attorney failed to file a petition for a writ of certiorari.  A defendant has a right to effective assistance of counsel only on the first appeal as of right.  <u>Miller</u>, 882 F.2d at 1431.

## III.  No Evidentiary Hearing Is Necessary

Defendant has not shown the need for an evidentiary hearing on his claims.  The district court may deny an evidentiary hearing based on "a record which included transcripts of the plea and sentence hearings" as well as other documents in the record and "the judge's own recollection of the proceedings."  <u>Shah v. United States</u>, 878 F.3d 1156, 1160 (9th Cir. 1989).  Because the record here refutes the allegations in the § 2255 motion, Defendant is not entitled to an evidentiary hearing.  <u>See id.</u> at 1159 (judges may use their own notes and recollections, as well as common sense, to supplement the record).

As additional authority, Defendant cites <u>Alleyne v. United States</u>, 133 S. Ct. 2151, 2155 (2013), which holds that a jury must determine facts that increase the statutory mandatory minimum.  But <u>Alleyne</u> does not apply here because a defendant who specifies an amount of drugs when he pleads

guilty waives any right to have a jury determine the amount beyond a reasonable doubt. <u>See</u> <u>United States v. Silva</u>, 247 F.3d 1051, 1060 (9th Cir. 2001). In any event, the rule announced in <u>Alleyne</u> does not apply retroactively on collateral review. <u>Hughes v. United States</u>, 770 F.3d 814, 818 (9th Cir. 2014).

### CONCLUSION

Defendant's motion to vacate or correct sentence (#245) is denied. Because defendant has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is denied. <u>See</u> 28 U.S.C. 2253(c)(2).

IT IS SO ORDERED.

DATED this __3__ day of March, 2015.

_____
OWEN M. PANNER
United States District Judge